**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN DOE, a minor proceeding under a pseudonym, by and through his natural parent, JANE DOE,<br><br>Plaintiff<br><br>v.<br><br>JASON GATHING,<br><br>Defendant | Case No.: 2:24-cv-01626-APG-BNW<br><br>**Order (1) Granting Defendant's Motion for Summary Judgment and (2) Denying Plaintiff's Motion for Partial Summary Judgment**<br><br>[ECF Nos. 33; 37] |

John Doe, a minor proceeding under a pseudonym, sues Jason Gathing, a law enforcement officer employed by the Las Vegas Metropolitan Police Department (LVMPD), alleging that Gathing's takedown maneuver during a July 5, 2023 arrest constituted excessive force. He sues for damages under 42 U.S.C. § 1983 and the Fourth Amendment.[1] Gathing moves for summary judgment, arguing that his takedown did not constitute excessive force.[2] Alternatively, Gathing argues he is entitled to qualified immunity. Doe opposes the motion and moves for partial summary judgment solely on the issue of the cause of his injuries.

I grant Gathing's motion because he is entitled to qualified immunity. I thus deny Doe's motion as moot.

/ / / /

---

[1] I construe Doe's claim for "Unlawful Use of Excessive Force in Violation of the Fourth Amendment" as a § 1983 claim. ECF No. 1 at 8-9 (referring to the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1988).

[2] The complaint lists three claims, including a § 1983 claim against another LVMPD officer, Brian Benitez, and a second claim against Gathing under Article 1 § 18 of the Nevada Constitution. ECF No. 1 at 6–10. The parties later stipulated to dismiss Benitez, which I granted. ECF Nos. 39 at 1–2; 40 at 1–2. Doe also voluntarily dismissed his claim under the Nevada Constitution. ECF No. 45 at 23. As a result, the only remaining claim is the § 1983 excessive force claim against Gathing.

## I. Facts

On July 5, 2023, John Doe, a 13-year-old boy, walked from his mother's house to his friend's apartment and entered a car that he immediately understood to be stolen. ECF No. 34-1 at 9, 13, 14. Doe and his friends began travelling around the area, followed by undercover LVMPD officers. *Id.* at 3, 14. The officers began following the car after it had been reported stolen. *Id.* at 3. Eventually, the three minors parked and entered a Burger King. *Id.* at 3, 15. Shortly thereafter, several uniformed LVMPD officers entered the Burger King with weapons drawn. *Id.* at 16; ECF No. 36, Ex. E at 00:01:11; Ex. F at 0:00:30.[3] Doe's two friends immediately surrendered, while Doe slipped out through the unsecured side door. Ex. F at 00:00:35; Ex. E at 00:01:20.

Doe ran into moving traffic on the street, coming within inches of being struck by a sedan. Ex. E at 00:01:26. Gathing followed in close pursuit, issuing multiple commands for Doe to stop running or he would shoot him. Ex. H at 00:03:10. Doe continued running, grabbing his waistband in the process. ECF No. 34-1 at 18; Ex. E at 0:01:35. Eventually, Doe reached the sidewalk, stopped running, turned to face the officers, and raised his hands to surrender. Ex. E at 00:01:37; Ex. H at 00:03:16. He held a black object in one hand, which turned out to be his cell phone. Ex. H at 00:03:17; ECF No. 34-1 at 19. Gathing, a few steps behind in pursuit, jumped and launched his body into Doe's chest, sending Doe down onto the concrete sidewalk. Ex. E at 00:01:38; Ex. H at 00:03:18. Officers then handcuffed Doe before taking him back to the Burger King for medical treatment. Ex. E at 00:01:43; Ex. H at 00:04:20.

---

[3] ECF No. 36 is a flash drive containing several videos. I cite to those videos by their exhibit number and the approximate run time on the video (not the time of day depicted in the video). Exhibit E is aerial video surveillance. Exhibit F is Officer Michael Springer's body worn camera (BWC) video. Exhibit H is Gathing's BWC video.

The officers transported Doe to the hospital based on LVMPD policy. ECF No. 34-1 at 21, 22, 115. At the hospital, Doe did not report any headaches or concussive symptoms. *Id.* at 140, 142–43. The only symptoms he reported were related to the scrapes he sustained to his head and hips. *Id.* Following a doctor's examination, Doe was released from the hospital and transported to the Clark County Juvenile Detention Center. *Id.* at 164–65. The next day, Doe woke up with a headache, returned to the hospital, and was diagnosed with post-concussive syndrome. *Id.* at 26; ECF No. 45-11 at 4, 8, 11.

**II. Analysis**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists where, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.").

I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440–41 (9th Cir. 2017). I may not resolve genuine disputes of fact in favor of the moving party. *See Brosseau v. Haugen*, 543 U.S. 194,

195 n.2 (2004) (per curiam). This "is simply an application of the more general rule that a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Zetwick*, 850 F.3d at 441 (quoting *Tolan v. Cotton*, 572 U.S. 650, 656) (2014)). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, [I] should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

I employ a two-pronged analysis to determine if qualified immunity applies. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, I consider whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right[.]" *Id.* at 201. Next, I determine whether the right was clearly established at the time of the alleged violation. *Id.* But I have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan* 555 U.S. 223, 236 (2009). In either case, once an officer asserts a qualified immunity defense, the plaintiff bears the burden to show "that the official's actions violated a constitutional right, and that the right was 'clearly established' at the time of the violative conduct." *Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

With respect to the second prong, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are

sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (simplified). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* The rule must be "dictated by controlling authority or a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quotation omitted). "It is not enough that a rule is suggested by then-existing precedent." *Id.*

I must "not . . . define clearly established law at a high level of generality." *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 613 (2015) (quotation omitted). Rather, the "clearly established law must be 'particularized' to the facts of the case." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *id.*). Rather, this analysis requires "identify[ing] a case where an officer acting under similar circumstances as [Gathing] was held to have violated the Fourth Amendment." *Id.*

Here, Doe points primarily to *Blankenhorn v. City of Orange*, which he argues stands "for the proposition that tackling a 'relatively calm' suspect who posed little threat to the safety of others was a Fourth Amendment violation." ECF No. 45 at 22 (quoting 485 F.3d 463, 480–81 (9th Cir. 2007)). Conversely, Gathing argues that *Blankenhorn* is "vastly dissimilar" to this case, characterizing Doe's reliance on it is an "invitation to define clearly established law at a high level of generality." ECF No. 48 at 10.

*Blankenhorn* is too factually distinguishable to serve as established law here. In *Blankenhorn*, officers confronted the plaintiff while he spoke to a friend in a shopping mall

because they recognized him as gang affiliated and recalled that he had previously been trespassed from the property. 485 F.3d at 468. According to the plaintiff, an officer "yelled for him to come over because he wanted to talk to him." *Id.* Blankenhorn responded: "I'm having a conversation with a friend, you rudely interrupt me, what's wrong with you, you don't have any manners?" *Id.* After a continued verbal altercation, the officer then prevented him from leaving, did not respond to his questions, and grabbed him by the arm. *Id.* at 469. The plaintiff yanked his arm out of the officer's grasp, becoming "angry" and "loud" as two more officers arrived at the scene. *Id.* One of the officers ordered Blankenhorn to his knees so he could be handcuffed. *Id*. He refused. *Id.* Then, the plaintiff alleged, the three officers immediately "all jumped on [him]," took him to the ground after a struggle, handcuffed him, punched him several times, and placed a knee behind his neck to press his face to the ground. *Id.* at 469–70.

The *Blankenhorn* court viewed the facts in the light most favorable to the plaintiff and ruled that clearly established law "would have put a prudent officer on notice that gang-tackling without first attempting a less violent means of arresting a relatively calm trespass suspect—especially one who had been cooperative in the past and was at the moment not actively resisting arrest—was a violation of that person's Fourth Amendment rights." *Id.* at 481. The court also held it to be clearly established that "punching Blankenhorn to free his arms when, in fact, he was not manipulating his arms in an attempt to avoid being handcuffed, was also a Fourth Amendment violation." *Id.*

But *Blankenhorn* also states that "[n]either tackling nor punching a suspect to make an arrest necessarily constitutes excessive force." 485 F.3d at 477. "Not every push or shove, even if it may seem unnecessary in the peace of the judge's chambers[ ] . . . violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quotation omitted). Indeed, the

Fourth Amendment "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force necessary in a particular situation." *Id.* at 396-97. The *Blankenhorn* court reasoned in part that it was "the pace of events" that led to the conclusion "that the latitude *Graham* requires for split-second police judgments in 'tense, uncertain, or rapidly evolving' situations was not warranted.'" 485 F.3d at 478 (quoting *id.* at 397).

Here, unlike *Blankenhorn*, even viewing the facts in the light most favorable to Doe, Gathing had only "three to four seconds" to determine whether Doe was surrendering, still fleeing, or turning to fight or shoot before he made contact. ECF No. 45 at 18 (citing Ex. E at 00:01:36–00:01:42); *see also* Ex. E at 0:01:36 (when Doe starts to slow down and partially turns toward Gathing) through 0:01:39 (when Gathing makes contact). That reaction time is narrowed by the fact that Gathing was running toward Doe while Doe was slowing and turning around. Unlike the plaintiff in *Blankenhorn*, Doe fled, ran through traffic, carried a black object in his hand, and reached for his pants while fleeing. Additionally, unlike the officers in *Blankenhorn*, Gathing had only seconds to assess the threat and choose a course of action while running toward Doe, who had turned to face him with the black object in his hand. This stands in stark contrast to *Blankenhorn*, where a group of officers stood around arguing with the plaintiff before allegedly gang tackling him in absence of any urgency necessitating such a takedown. 485 F.3d at 478–79.

Doe asserts that he unambiguously attempted to surrender upon reaching the sidewalk. But Gathing was pursuing him sufficiently closely such that Doe's sudden stop and partial about-face required a snap judgment in a rapidly developing situation, immediately following Doe's

flight from law enforcement. Given that context and his short reaction time, Gathing could reasonably interpret Doe's actions as something other than an unambiguous surrender in the heat of the moment. *See Barnes v. Felix,* 605 U.S. 73, 80 (2025) (use of force reasonableness inquiry "has no time limit" and "earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones"). This was not the case in *Blankenhorn*, where the officers had the benefit of a stationary, slow-moving scene. *See, e.g.*, *Hogan v. Cunningham*, 722 F.3d 725, 736 (5th Cir. 2013) (distinguishing *Blankenhorn* because "this case *did* involve a split-second police judgment . . . and the [o]fficers had to decide immediately how to react") (emphasis in original). *Blankenhorn* does not clearly establish that Gathing's conduct violated the Fourth Amendment.

Doe's only other cited case is *Andrews v. City of Henderson*, 35 F.4th 710 (9th Cir. 2022). That case is also too dissimilar to serve as clearly established law. There, plainclothes detectives followed an armed robbery suspect through a municipal courthouse, waited for him to exit to the street, and then tackled him without any warning. *Id.* at 713–14. The officers knew the suspect was unarmed because he had just passed through courthouse security. *Id.* at 713. The Ninth Circuit held that, viewing the facts in the light most favorable to the plaintiff, a reasonable jury could find the force used was excessive because the plaintiff "was unarmed," lacked "any aggressive, threatening, or evasive behavior," and the officers did not "provide any prior warning or consider less intrusive alternatives before forcibly tackling him to the ground." *Id.* at 718. The Ninth Circuit also concluded that the officers were not entitled to qualified immunity because "*Blankenhorn* clearly established—and thus put a prudent officer on notice—that an officer violates the Fourth Amendment by tackling and piling on top of a relatively calm, non-resisting

suspect who posed little threat of safety without any prior warning and without attempting a less violent means of effecting an arrest." *Id.* (quotation omitted).

*Andrews* involved no chase, the officers knew the suspect was unarmed, they had time to deliberate about how to arrest the plaintiff, and they performed a calculated operation as opposed to a split-second judgment in a hot pursuit foot chase where the officer did not know whether the suspect was armed, was preparing to fight,[4] or would continue to flee. *Andrews* thus is not clearly established law that would have put Gathing on notice that he would violate the Fourth Amendment if he tackled Doe.

I grant Gathing's motion for summary judgment because Doe has not met his burden to point to clearly established law demonstrating that no "reasonable officer could have believed [this] conduct was justified." *Sheehan*, 575 U.S. at 616 (quotation omitted). And because Gathing is entitled to qualified immunity, I do not decide whether his conduct violated the Fourth Amendment. *See, e.g.*, *id.* at 617 ("Because the qualified immunity analysis is straightforward, we need not decide whether the Constitution was violated" by the officer's contested act). Because I grant Gathing's motion for summary judgment, I deny Doe's motion for partial summary judgment on causation as moot.

## III. Conclusion

I THEREFORE ORDER that defendant Jason Gathing's motion for summary judgment (**ECF No. 33**) is **GRANTED**.

---

[4] On this point, while Doe's expert "testified that he did not see [Doe] take a bladed stance suggestive of preparing to fight," he "later agreed with counsel that [Doe]'s stance was slightly bladed according to counsel's own definition (*i.e.* that one side of the body was slightly more turned toward Gathing)." ECF No. 45 at 18 (citing ECF No. 45-8 at 3–5). Doe argues that this is because officers were "running towards [Doe] from all angles, which would likely affect his stance." *Id.* But this is immaterial to whether Gathing reasonably perceived Doe to pose a threat in the moments before impact.

I FURTHER ORDER that plaintiff John Doe's motion for partial summary judgment (**ECF No. 37**) is **DENIED** as moot.

I FURTHER ORDER the clerk of court to enter judgment in favor of defendant Jason Gathing and against plaintiff John Doe, and to close this case.

DATED this 17th day of September, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE